[No. 1182-2.    Division Two.    December 12, 1974.]

The State of Washington, *Respondent*, v. Richard H. Pate, *Appellant*.

*Judith S. Dubester, Donald L. McCulloch,* and *Roethler & McCulloch,* for appellant.

*Henry R. Dunn, Prosecuting Attorney,* and *Kenneth Cowsert, Deputy,* for respondent.

Armstrong, J.—This appeal by Richard Hobson Pate, a/k/a Rolland C. Alonzo, from a jury conviction for violations of the Uniform Controlled Substances Act raises a first impression issue regarding establishment of probable cause through an informant's tip. Does verification of an informant's successful work for other law enforcement agencies satisfy the second prong of *Aguilar v. Texas,* 378

U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), under which it must be shown that the informant is reliable? We hold that it does. We do not agree with the defendant's other assignments of error, and therefore, affirm the conviction.

Upon his arrival in Longview, Washington, an individual, who will remain unidentified in this opinion, and whom we shall refer to as Doe, contacted Officer Gerald Jackson of the City of Longview Police Department, seeking employment as an undercover agent. He informed Jackson that he had committed an armed robbery and had "been in trouble with the law twice." He showed Jackson his driver's license, newspaper clippings, letters of reference, and a commission card indicating he had done undercover work in several other states. Jackson telephoned four different police agencies, all of which informed Jackson that Doe had worked for them on a salary basis, that they had made arrests in several cases based upon the information he had supplied (including 25 or 30 cases in one city), and that they recommended him. Two agencies said that he had testified in court for them. Jackson did not take Doe's fingerprints or check with the FBI because of the length of time such a check usually took. Jackson's superior authorized the hiring of Doe, and he gave Doe $300.

A few days later, at 9 a.m. on February 14, 1973, pursuant to a telephone call from Doe, Jackson and another officer went to Doe's motel room where he told them that he had purchased some drugs from two men, that the men were to meet him around 11 a.m. that morning, that they would have a large quantity of drugs in a flight bag, and that they would be driving a gold car with a particular license number. He showed them several hundred capsules he had purchased from them, which were field tested and determined to be cocaine and heroin.

Immediately after this meeting, beginning about 9:30 a.m. Jackson attempted to obtain money with which to purchase the drugs and instructed another officer to set up photo-

graphic equipment. He was able to obtain only one-third the amount of money needed, and after further discussion with Doe, decided to undertake the arrest at the time of the planned meeting, rather than merely recording a buy. He and Doe rode back to the police station where he instructed the other officer to obtain some shotguns and then arranged for a patrol to keep a lookout for the suspect's car. He, Doe and another officer drove to an alley near the parking lot of Doe's motel, arriving about 10:45 or 10:50 a.m. At approximately 11:10 or 11:15 a.m., a car bearing the correct license number, though silver in color, drove by, pulled into a parking lot a short way from the motel, and stopped. The two men in the car matched the descriptions Doe had given. The officers went to the car, placed the two men under arrest and asked them to get out of the car, which they did. They were then searched. The vehicle was also searched, and a flight bag and a paper bag, both containing several thousand capsules of drugs, were seized.

The two men, Richard Hobson Pate, a/k/a Rolland C. Alonzo, and Thomas Brent Wyland, a/k/a Thomas H. Walker, were charged in a second amended complaint with five counts of violations of the Uniform Controlled Substances Act: one count of delivery and one count of possession of a derivative of barbiturate acid, one count of delivery of methamphetamine, one count of possession of amphetamines, and one count of possession of marijuana. Pate was sentenced to 30 days in jail on the possession of marijuana charge and a maximum of 10 years in prison on the four felony counts.

One of Pate's primary contentions is that Officer Jackson did not have probable cause to arrest him. If probable cause existed, it must be based on Doe's tip because Jackson had no other information, personal or otherwise, concerning the two suspects. Of course, probable cause need not be based on an officer's personal knowledge and may be founded entirely upon the information provided by

another.[1] *Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960); *Aguilar v. Texas, supra.*

Probable cause based on an informant's tip must be judged by the two-pronged test of *Aguilar v. Texas, supra. State v. White*, 10 Wn. App. 273, 518 P.2d 245 (1973). The first prong—the tip must recite the underlying facts or circumstances on which the informant based the tip so that the arresting officer has a sufficient basis for concluding that the *information* is reliable—is not challenged here. Rather, we are asked to consider whether the second prong —the *informant* must be shown to be reliable—has been established.

Since the tip came not from an anonymous informer, but rather from one that was known and identified, corroboration of the tip was not essential if the informant was reliable. *State v. Chatmon*, 9 Wn. App. 741, 515 P.2d 530 (1973). It is not clear whether it is necessary for the reliability of a professional informant to be established through proof of *previous reliability. See State v. Chatmon, supra*, where this court held that such a showing is not necessary when a "citizen" informer is involved. We do not reach the question whether reliability of a professional can be established without showing previous reliability because we hold that in the instant case a showing of previous reliability did exist. *See also State v. Harker*, 5 Wn. App. 381, 486 P.2d 1162 (1971) (it was sufficient that the officer had an opportunity to assess the reliability of an informant through three interviews with him).

█ ■Reliability has often been established by the fact that the informant had previously supplied accurate, helpful information to the law enforcement agency in question. *See Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959); *United States v. LePree*, 434 F.2d 1034

---

[1]Although the issue of probable cause often arises with a challenge to a search or arrest warrant, the same test of probable cause applies to a warrantless arrest and search. *Whiteley v. Warden*, 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971); *State v. White*, 10 Wn. App. 273, 518 P.2d 245 (1973).

(3d Cir. 1970); *United States v. Vigo*, 357 F. Supp. 1360 (S.D.N.Y. 1972); *Commonwealth v. Avery*, 309 N.E.2d 497 (Mass. 1974). However, Officer Jackson had no personal knowledge of Doe's prior undercover work. Nor had Doe ever worked for the Longview police. A showing of Doe's reliability, therefore, must be found in Officer Jackson's communications with other police departments.

It is clear that Officer Jackson made a substantial effort to determine the reliability of Doe. Not relying solely on one other law enforcement agency, he contacted a total of four different previous employers, all of which recommended Doe. This was as accurate an indication of Doe's reliability as previous employment in Longview would have been. It demonstrated that he was trustworthy, would cooperate fully and would produce accurate information. To hold that these communications were insufficient to establish reliability would create a "Catch-22" situation in which an informant may not work for a particular law enforcement department unless he has previously been employed by that department, except in the very rare instance where he has previously supplied reliable information as a citizen. In light of the strong indicia of reliability present here, it was not necessary for Jackson to contact the FBI or run a fingerprint check. It is not unusual for an informant to have a criminal background, and any possibility that this background would affect his credibility would have been revealed during Jackson's discussions with other employers.

Through his attorney, Pate also challenges the reasonableness of the search of the automobile following his arrest. We find that the exigent circumstances extant at the time of the arrest justified a warrantless search.

█ We note again that a search of an automobile is subject to a less strict test of reasonableness than a search of a house. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *State v. White, supra.*

In the case at bar, the car was stopped in a public park-

ing lot, there was probable cause to believe that contraband was in the car, and the police had no way of knowing that there were no accomplices who could have moved the car. *Chambers v. Maroney, supra,* is directly applicable here. In *Chambers,* defendant's car was stopped on the highway, the defendants were arrested, and the car was towed to the police station and searched. Relying on *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925), the court found that the fact that the car was readily movable justified a search at the time of arrest, whether the search is done on the highway or immediately after it is taken to the police station. The court stated:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
> On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search.

*Chambers v. Maroney, supra* at 52. Applying these principles to the instant case, we conclude that the challenged search was reasonable.

In a supplemental brief, Pate himself has raised three additional assignments of error: that he was prejudiced by a multiple count information and the introduction of evidence of possession of large quantities of drugs; that he was prejudiced by conduct of codefendant's counsel; and that he was denied effective counsel because his attorney at trial was a good friend of Officer Jackson. We have carefully considered these assignments and have found them to be without merit.

Affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied January 29, 1975.

Review denied by Supreme Court March 25, 1975.