547 P.2d 1124

The STATE of Idaho, Plaintiff-Respondent,

v.

Gary Russell ANSPAUGH, Defendant-Appellant.

No. 11365.

Supreme Court of Idaho.

March 30, 1976.

Jeffrey M. Wilson, Matthews & Lee, Boise, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Gordon S. Nielson, Senior Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

On December 15, 1972, an information was filed charging defendant-appellant Gary Russell Anspaugh with the crime of murder in the first degree. An additional information was filed on February 6, 1973, designated Information Part II charging defendant with being a persistent violator of the law. After a jury found defendant guilty as to Part I of the information, he entered a plea of guilty to Part II, the charge of being a persistent violator of the law, which plea was accepted by the district court. The court entered a judgment of conviction on both charges and sentenced the defendant to the custody of the State Board of Correction for a term not to exceed life. Defendant appeals from

the judgment and sentence and asks for a new trial.

Defendant asserts that the district court erred in four respects during the trial: When it allowed defendant's former wife to describe acts of the defendant on the night of the alleged crime; when it refused to exclude statements made by the defendant to a police officer after the defendant allegedly tried to curtail further questioning; when it allowed the state to play a tape recorded statement of the defendant as part of its rebuttal to the defendant's case in chief; and when it refused to exclude certain photographs of the deceased victim. Defendant concludes that these alleged errors, either alone or cumulatively, require reversal and a new trial.

The first of defendant's assigned errors concerns the testimony of his former wife, Geneva Anspaugh, about the events of November 12, 1972. In the early morning of that day the defendant, the victim and Mrs. Anspaugh all gathered at her home in Garden City. The defendant and his wife were "separated" but still married at this time and the defendant continued to reside in a separate portion of his wife's house. The victim, Mike Scrimia, had been keeping company with Mrs. Anspaugh and occasionally spent the night at her home. The defendant knew of this arrangement and said he did not object to it.

All three arrived at the Anspaugh's house shortly after leaving the Emerald Club and Mrs. Anspaugh fixed everyone a drink. During this time an argument broke out and according to Mrs. Anspaugh at one point she was slapped by the defendant. The events were climaxed when defendant pulled a gun out and shot the victim. Defendant claimed at trial that the shooting was in self defense, claiming that the victim Scrimia had first pulled a gun on him. Defendant's testimony was contradicted by that of Mrs. Anspaugh who had obtained a divorce from defendant prior to trial.

During trial Mrs. Anspaugh was not permitted to testify concerning any conversation between herself and the defendant. She was allowed to describe the defendant's actions and his conversation with the victim and there was no objection to this testimony. Defendant now urges that his acts as well as his words fall within the privilege afforded confidential marital communications.[1]

Defendant's claim is by no means a novel one; a similar proposal was before this Court in State v. Cliett, supra note 1. However, here, as in Cliett, no objection was made at trial to the testimony of the wife concerning the acts of her husband, the defendant; consequently its admissibility will not be considered on appeal. State v. Cliett, supra, at 648, 534 P.2d 476; State v. Haggard, 94 Idaho 249, 253, 486 P.2d 260 (1971).

By his next assignment the defendant questions the admissibility of certain statements made by him to police officers after his arrest. During the state's presen-

1. "I.C. § 9-203. Confidential relations and communications.—There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person can not be examined as a witness in the following cases:
1. A husband can not be examined for or against his wife, without her consent, nor a wife for or against her husband, without his consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other nor to a criminal action or proceeding for a crime committed by violence of one against the person of the other, nor does this exception apply to any case of physical injury to a child where the injury has been caused as a result of physical abuse or neglect by one or both of the parents."
It should be noted that while divorce does terminate the incompetency of a husband or wife to testify for or against the other it has no effect on the privilege afforded marital communications. State v. Cliett, 96 Idaho 646, 534 P.2d 476 (1975); Hess v. Hess, 41 Idaho 359, 239 P. 956 (1925).

tation of its case it introduced into evidence a written acknowledgment of *Miranda* rights and waiver thereof, which the appellant had signed after his arrest. Pursuant to the waiver, the trial court admitted a cassette tape recording and transcript of the subsequent interrogation of the appellant. Defense counsel objected to the admissibility of certain parts of the tape and transcript, claiming that during interrogation the appellant rescinded his waiver of *Miranda* rights. Defendant counsel's objection was overruled.

The defendant directs our attention to the following excerpt from his statement to Lt. Wells, the interrogating police officer:

"LT. WELLS: Now, ah, when he pulled this gun, did he have time to have shot you before you got your gun out of your pocket to shoot him?

"GARY ANSPAUGH: I don't know, how long does it take to shoot someone?

"LT. WELLS: Well, what I'm getting at, did he have this gun out, in view, and pointed in your direction? Before you first started to take your gun out of your pocket?

"GARY ANSPAUGH: Other than, I wanted to establish the fact that this gun does belong to Mike.

"LT. WELLS: Uh-huh.

"GARY ANSPAUGH: And I turned it over to Sgt. Barnes, because I want it checked to see if it was registered to him.

"LT. WELLS: Okay.

"GARY ANSPAUGH: And, if it isn't registered, I want it checked with his wife, because she knows that he carried it. She told me this before. This was sometime ago. And other than establishing the fact that this is his gun and stating that he pulled this gun on me, I'd rather not make any other comments at this time.

"LT. WELLS: In this area?

"GARY ANSPAUGH: That's right.

"LT. WELLS: Then, there is a couple of other questions that I would like to ask you. The gun that you stated you had, could you tell us where it is.

"GARY ANSPAUGH: As near as I could tell you, it's somewhere out by Gowen Field. I started driving around and I tossed it out in a field out there by the airport, that's just a rough (interruption). All I know is it was somewhere out near Gowen Field and I tossed it out the window."

Defendant contends that when he said, "I'd rather not make any other comments at this time," he rescinded his prior waiver of his *Miranda* rights. He relies on the following language from the *Miranda* opinion itself:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Miranda v. Arizona*, 384 U.S. 436, 473–474, 86 S.Ct. 1602, 1627–1628, 16 L.Ed.2d 694 (1966).

At issue here is the defendant's "right to cut off questioning." The United States Supreme Court has recently held that "through the exercise of [the defendant's] option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial set-

ting." *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, 44 U.S.L.W. 4015 (1975). We believe that the transcript of defendant's statement shows only his desire to control the subjects discussed and not to terminate questioning entirely. *State v. Nichols*, 212 Kan. 814, 512 P.2d 329, 331–332 (1973); *Akers v. Commonwealth*, 216 Va. 40, 216 S.E.2d 28 (1975). At the time defendant indicated his reluctance to answer further questions he was being questioned about the victim's gun. The officer asked him if his reluctance related to this particular area and the defendant replied, "That's right." The officer immediately shifted the interrogation to a discussion of defendant's own gun and later to other areas. The transcript does not show any reluctance on defendant's part to pursue other lines of questioning. Several times during the interrogation the defendant declined to answer certain questions and he was never pressed to answer them. There was nothing here to indicate the coerciveness or undue pressure against which *Miranda* was designed to protect and there was nothing to indicate that the defendant was not in control of the interrogation throughout. Consequently, we find no error.

■ At the time the tape cassette was admitted into evidence, a malfunctioning tape recorder prevented the jury from hearing the tape, and therefore the transcript of the statement was submitted. However, at the close of the defendant's case, the state produced a working tape recorder and the cassette tape was played for the jury as a part of the state's rebuttal. The court allowed the jury to hear the tape over the objection of defense counsel.

According to defendant the tape was unnecessary, cumulative evidence of the state's case in chief. He asserts that by allowing the tape to be played the trial court abused its discretion.

The order of trial is established by I.C. § 19–2101. That statute provides that following the close of defendant's case in chief only rebutting testimony may be entered.[2] However, this order may be departed from in the sound discretion of the court. I.C. § 19–2102.[3] In the present case the tape was not played because of the malfunctioning of the tape recorder. Although repetitious its introduction did not constitute an abuse of discretion. In *Findley v. Woodall*, 86 Idaho 439, 443, 387 P.2d 594, 596 (1963), we cited with approval the following language of the Oregon Supreme Court in *Freedman v. Cholick*, 233 Or. 569, 379 P.2d 575, 578 (1963):

> "That portion of the proferred testimony which the plaintiff sought to elicit from the building contractor * * * was cumulative. Testimony on that score had been placed before the jury in the plaintiff's case-in-chief. While there would have been no reversible error in receiving cumulative testimony on rebuttal, neither would there be error in excluding it. The matter is discretionary."

■ For his final assignment the defendant objects to the introduction of state's exhibits 15, 16 and 17. These exhibits are color photographs of the deceased

2. "I.C. § 19–2101. *Order of trial.*—The jury having been impaneled and sworn, the trial must proceed in the following order:
1. If the indictment is for a felony, the clerk must read it and state the plea of the defendant to the jury. In all other cases this formality may be dispensed with.
2. The prosecuting attorney or other counsel for the people must open the cause and offer the evidence in support of the indictment.
3. The defendant or his counsel may then open the defense and offer his evidence in support thereof.

4. The parties may then respectively offer rebutting testimony only, unless the court for good reason, in furtherance of justice, permit them to offer evidence upon their original case."

3. "I.C. § 19–2102. *When order may be departed from.*—When the state of the pleadings requires it, or in any other case for good reasons, and in the sound discretion of the court, the order prescribed in the last section may be departed from."

victim showing the location of the wound on the deceased. Although defendant now claims the photographs were repetitious of previous testimony and prejudicial, they were admitted without objection at trial. "Objections to evidence cannot be raised for the first time on appeal." *State v. Taylor*, 76 Idaho 358, 283 P.2d 582 (1955).

There being no error below the judgment and sentence of the district court will be affirmed as to Parts I and II of the Information. Affirmed.

McFADDEN, SHEPARD and BAKES, JJ., and SCOGGIN, District Judge, concur.