[Cite as *State v. Gray*, 2017-Ohio-563.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 27207 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 16-CR-1201 |
| v. | : | |
| | : | (Criminal Appeal from |
| ERNEST GRAY | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 17th day of February, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN D. WOODALL, Atty. Reg. No. 0069386, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

KRISTINE E. COMUNALE, Atty. Reg. No. 0062037, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, P.J.

{¶ 1} The State of Ohio appeals, pursuant to R.C. 2945.67 and Crim.R. 12(K), from the trial court's decision and entry sustaining in part defendant-appellee Ernest Gray's

motion to suppress evidence.

{¶ 2} The State advances two assignments of error. First, it contends the trial court erred in sustaining Gray's suppression motion where he did not unambiguously invoke his right to remain silent during police questioning. Second, the State claims the trial court erred in finding Gray's confession to gross sexual imposition involuntary under the totality of the circumstances.

{¶ 3} The record reflects that Dayton police received a complaint in March 2016 about Gray, who was 73 years old, inappropriately touching a six-year-old relative's vagina on a specific occasion. In April 2016, detectives contacted Gray, and he agreed to be interviewed at the police station. He voluntarily arrived on April 15, 2016 and proceeded to an interview room with two detectives, Hollie Bruss and Elizabeth Alley. The interview began at 9:05 a.m. Detective Bruss advised Gray that the was being interviewed in connection with a sexual-assault investigation. She also advised him of his *Miranda* rights and inquired about his understanding of them. Gray, who had 11 years of schooling, indicated that he understood his rights and waived them. The detectives proceeded to interview Gray, on and off, over a period of two and one-half hours. Gray repeatedly denied allegations that he had touched the young girl's vagina. He also asserted that he did not "remember" touching the child inappropriately. Approximately 50 minutes into the interview, Alley suggested alternatives to explain what might have occurred, including the child possibly placing his hand "down there." The following exchange then occurred:

Gray: I know I didn't go down inside her pants and touch her.

Alley: Did she put your hand down there?

Gray: [lengthy pause] I'm just gonna leave it like that, I'm just gonna

leave it like that.

Alley: Why?

Gray: I'm just gonna leave it like that, I'm just gonna leave it like that.

Alley: Tell me why [pause], why are you gonna leave it just like that?

Gray: Because I don't have anything else to say, leave it like that.

Alley: So you're gonna make this little girl out to be a liar?

Gray: No, well, I'm not making her out to be a liar or nothin' like that, but she, she knows better than that.

Alley: Let me ask you this. Would it be helpful for you to write it down so you don't have to talk about it? Sometimes people might prefer to write something down when they don't want to talk about it.

Gray: Well, I don't have nothin', nothin' else to say. I don't have nothin' else to say.

Alley: You know people are more willing to forgive somebody who said that I messed up and I made a mistake. And you can get past this, but the first step is acknowledging that you made a mistake, and say I messed up, and I'm sorry. And I think you know in your heart what you need to do.

Gray: I don't remember touching her. I don't—I know I didn't touch her.

(Interview DVD, Suppression Hearing Exh. 1, beginning at approximately 9:57 a.m.).

{¶ 4} Alley continued to question Gray for about 12 more minutes. She then offered him time alone to write something down on a piece of paper. At 10:10 a.m. both detectives left the room and closed the door. At 10:18, Gray opened the door and got the detectives'

attention. Alley returned to the room and sat near Gray, who proceeded to make incriminating statements. He admitted touching the child's vagina, described how the incident occurred, and acknowledged telling her not to report the incident. Questioning then continued intermittently with the two detectives entering and exiting the room until 11:23 a.m., when Gray was handcuffed and taken to jail.

{¶ 5} In May 2016, Gray moved to suppress the incriminating statements he made in his interview. During a June 2016 evidentiary hearing on his motion, the State presented testimony from Bruss and Alley, who testified about the interview. The trial court also reviewed a DVD of the interview, which had been recorded in full. After the hearing, Gray filed a memorandum in support of his motion. He argued that his statements were made during a custodial interrogation, that his statements occurred after he unequivocally invoked his right to remain silent, and that his statements were involuntary and not the product of his free will. (Doc. #21). In response, the State argued that, although *Miranda* warnings were given, Gray was not in custody when he made his incriminating statements. Alternatively, the State asserted that Gray validly waived his *Miranda* rights and never unambiguously invoked his right to remain silent. (Doc. #22).

{¶ 6} In a July 27, 2016 decision and entry, the trial court sustained Gray's suppression motion with respect to all statements he made after 9:57 a.m. on the interview DVD. (Doc. #23). With regard to the existence of a custodial interrogation and the corresponding necessity of *Miranda* warnings, the trial court found it "immaterial whether the State was required to issue *Miranda* warnings." (*Id.* at 5). Because the detectives had advised Gray of his *Miranda* rights, the trial court reasoned that the State was "estopped to deny these rights on an after the fact assertion that Defendant was not

in custody and therefore the rights did not apply." (*Id.* at 6). In any event, the trial court also found "that this was a custodial interrogation and the *Miranda* warnings apply." (*Id.*). The trial court next concluded that Gray unambiguously invoked his constitutional right to remain silent when he made the statements set forth above about wanting to "leave it like that" and not having anything else to say. (*Id.* at 14-16). Because Alley continued questioning Gray, the trial court found his subsequent incriminating statements subject to suppression. Finally, the trial court also concluded that Gray's confession was involuntary under the totality of the circumstances because his will was overborne by coercive police conduct. (*Id.* at 16-18).

{¶ 7} In its first assignment of error, the State challenges the trial court's determination that Gray unambiguously invoked his right to remain silent. In context, the State contends Gray's statement about wanting to "leave it like that" reasonably may be interpreted to mean only that he did not wish to supplement or amend his previous answer about not touching the victim inside her pants. Gray's subsequent statement about not having anything else to say came in response to Alley asking him why he wished to "leave it like that." Therefore, according to the State, the comment about not having anything else to say reasonably may be interpreted as the rationale for Gray not wanting to supplement or amend his previous answer. At a minimum, the State argues that Gray's remarks about wanting to "leave it like that" because he had nothing else to say did not unambiguously express his desire to remain silent and terminate the interview. Upon review, we find the State's argument to be persuasive.

{¶ 8} "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate

the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted*.) State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Here the facts are not in dispute, and we have a DVD recording of Gray's interview to review. Whether he unambiguously invoked his right to remain silent involves a legal issue that we review de novo. *State v. Strong*, 1st Dist. Hamilton Nos. C-100484, C-100486, 2011-Ohio-4947, ¶ 47; *see also United States v. McWhorter*, 515 Fed. Appx. 511, 517 (6th Cir.2013) ("Upon de novo review, we conclude that McWhorter's statement to Park was not an unambiguous assertion of his right to remain silent."); *United States v. McCarthy*, 382 Fed. Appx. 789, 792 (10th Cir.2010) ("We review legal questions, including the issue of whether a defendant unambiguously asserted his right to remain silent, de novo.").

{¶ 9} For present purposes, we will assume, arguendo, that Gray was subject to a custodial interrogation, notwithstanding the fact that he voluntarily went to the police station to speak with the two detectives. Once seated in the interview room, Gray was advised of his *Miranda* rights and waived them. In light of that waiver, the detectives were not obligated to stop questioning him unless he unambiguously invoked his right to remain silent. *State v. Murphy*, 91 Ohio St.3d 516, 520, 747 N.E.2d 765 (2001). If a "suspect says something that may or may not be an invocation of the right, police may continue to question him; they need not treat the ambiguous statement as an invocation or try to clear up the ambiguity." *Id.* We note too that "a suspect's alleged invocation must be examined

in context, not in isolation." *Strong* at ¶ 47, citing *Murphy* at 520-521.

{¶ 10} In our view, Gray's statement about wanting to "leave it like that" appears to be related to his previous answer about not going inside the victim's pants. In other words, he was expressing a desire to stand on that answer without modifying or amending it in response to Alley's suggested explanation for what had occurred. When Alley asked why he wanted to "leave it like that," Gray responded that he had nothing else to say. This statement appears to be an explanation for his decision to stand on his previous answer. The statements are at most ambiguous as to whether he had nothing more to say about a particular question or whether he more broadly desired to terminate the interview.

{¶ 11} We note that a suspect expressing a desire not to elaborate on a prior answer because he has nothing else to say about it is not the same as expressing a desire to invoke the right to remain silent and to terminate the interview. *State v. Blythe*, 2d Dist. Montgomery No. 24961, 2013-Ohio-1688, ¶ 22, citing *State v. House*, 54 Ohio St.2d 297, 299-300, 376 N.E.2d 588 (1978), citing *State v. Anspaugh*, 97 Idaho 519, 547 P.2d 1124 (1976) (finding no rescission of a *Miranda* waiver where in response to a certain question the defendant stated that he would "rather not make any other comments at this time"). Because Gray never unambiguously invoked his right to remain silent, the trial court erred in suppressing the incriminating statements he made based on a perceived violation of that right.[1]

---

[1] In light of this conclusion, we need not address the State's alternative arguments that the trial court erred in suppressing (1) unsolicited statements Gray subsequently made while alone in the interview room (2) statements Gray made after purportedly re-initiating questioning with the detectives. (*See* Appellant's brief at 12-14). Given our determination above that Gray's right to remain silent was not violated at all, these issues (which the State does not appear to have raised below) are moot.

**{¶ 12}** In opposition to the foregoing conclusion, Gray cites *State v. Miller*, 7th Dist. Mahoning No. 13 MA 12, 2014-Ohio-2936, and argues that his case is analogous to it. (Appellee's brief at 12). We disagree. The defendant in *Miller* put his head down and repeatedly stated unequivocally, "I'm done talking." He then added, "I ain't got nothing else to say." He also said, "I told you everything I know. There ain't nothing else to talk about." *Miller* at ¶ 56-60. The Seventh District concluded that the defendant's initial statement ("I'm done talking.") was an unambiguous invocation of his right to remain silent. *Id.* at ¶ 61-62.

**{¶ 13}** As set forth above, Gray did not make clear that he was "done talking" and wanted to terminate the interview. Instead, after being given an opportunity to modify or elaborate on an answer he had given, he stated that he would "leave it like that." This statement was not an unambiguous invocation of his right to remain silent. Nor was Gray's subsequent statement that he had nothing else to say. As we have explained, Gray made this statement in response to a question about why he wanted to leave his prior answer "like that." Again, we see no unambiguous expression of Gray's desire to terminate the interview. Accordingly, the State's first assignment of error is sustained.

**{¶ 14}** In its second assignment of error, the State contends the trial court erred in finding Gray's confession involuntary under the Fifth Amendment. The State asserts that his confession was voluntary and that nothing about the circumstances surrounding it established otherwise.

**{¶ 15}** This court set forth the standards governing the voluntariness of a confession in *State v. Simpson*, 2d Dist. Montgomery No. 25069, 2013-Ohio-1072, as

follows:

"A suspect's decision to waive his Fifth Amendment privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. *State v. Otte* (1996), 74 Ohio St.3d 555; *State v. Petitjean* (2000), 140 Ohio App.3d 517. Coercive police activity is a necessary predicate to finding a confession involuntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *State v. Wiles* (1991), 59 Ohio St.3d 71.

"The voluntary nature of a defendant's statement is determined from the totality of the circumstances. *State v. Slagle* (1992), 65 Ohio St.3d 597; *State v. Treesh* (2001), 90 Ohio St.3d 460. A confession is involuntary if, on the totality of the circumstances, the defendant's will was overborne by the circumstances surrounding his giving of the confession. *Dickerson v. United States* (2000), 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405; *Petitjean*, supra.

"The totality of the circumstances test takes into consideration both the characteristics of the accused and the details of the interrogation. *Petitjean*, supra. Factors to be considered include the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *State v. Edwards* (1976), 49 Ohio St.2d 31. Use of deceit by the interrogating police officers and

misrepresentations made to the suspect about the evidence police possess do not per se render a confession involuntary, per se. Rather, it is but one factor bearing on voluntariness. *State v. Cooey* (1989), 46 Ohio St.3d 20.

* * *

"Whether an accused's confession was voluntary for purposes of the Fifth Amendment presents a question of law. An appellate court reviews that issue de novo, not being bound by the trial court's judgment on the same legal issue. The appellate court must give strong deference to the trial court's findings of the facts which underlie a claim of involuntariness."

*Id.* at ¶ 52, quoting *State v. Waldo*, 2d Dist. Champaign No. 99 CA 24, 2001 WL 1103330 (Sept. 21, 2001).

{¶ 16} In addition to its finding that Gray's right to remain silent was violated when the detectives questioned him after made the statements discussed above, the trial court also more broadly found his confession involuntary under the totality-of-the-circumstances test. The trial court determined that coercive police activity caused Gray's will to be overborne and his capacity for self-determination to be critically impaired. It reasoned:

The facts of this case indicate that the Defendant's will was overborne by the circumstances surrounding the giving of the confession. The Defendant is a seventy three year old man with little prior experience with law enforcement. Defendant executed a Pre-interview form and was advised of his right to terminate that interview at any time. The Defendant attempted to terminate the interview. The Detectives persisted and did not

scrupulously honor the request to terminate the questioning. Rather, the Detectives prompted him to keep speaking.

* * *

There is coercive police activity here. Defendant came to the police station voluntarily, at the request of the investigating Detective. Prior to the interrogation, a Pre-Interview Form was utilized. Defendant was advised of his Miranda rights. Defendant signed the waiver. Defendant is an older adult, he does not have any prior experience with law enforcement. Defendant is elderly, but is not developmentally disabled or handicapped in any particular way. He did not graduate from high school and does not have experience with the criminal justice system. There is no evidence that Defendant was deprived of food or sleep. There is no evidence that Defendant was deprived of water. There is no evidence that Defendant was denied restroom breaks.

The Defendant was interrogated on one occasion. The encounter was intense but relatively short in time. Defendant was not threatened. Defendant was not promised anything in exchange for his statements.

Defendant was told he could terminate the questioning at any time. Defendant attempted to do that. His request was ignored. Defendant adamantly denied the allegation and continued to do so repeatedly. Defendant was first advised of the specific allegation about twenty minutes into the interrogation. Detective Bruss used tactics like offering Mr. Gray scenarios of how it happened that would not be so bad, suggesting that the

complaining witness deserves an apology, told him that if he did not admit it he would be seen as a monster. Detective Alley then addressed Defendant and was initially kind and friendly. She progressively became more confrontational in her tactics to get Mr. Gray to confess. Once Mr. Gray said he had nothing else to say, she did not stop until Mr. Gray, as anyone in his position would have, came to the conclusion that the only way to end this was to give the Detectives what they wanted to hear.

Defendant was closed in an interrogation room with two Detectives and read his Miranda warnings, which included the right to stop questioning at any time. He was then interrogated by the two Detectives, one after the other, who relentlessly tried to get him to change his denial to an admission. Eventually, only after Defendant Gray told [them] he had nothing more to say, invoking his right to stop the questioning, and having Detective Alley persist, right in his face, Defendant made incriminating statements. The State has not met its burden of preponderance of the evidence in this voluntariness-of-confession case. The circumstances of lack of experience with law enforcement, lack of education for many years, intensity of the interrogation, and failure to scrupulously honor the right to remain silent, indicate lack of voluntariness.

(Doc. #23 at 16-18).

**{¶ 17}** Upon review, we disagree with the trial court's legal conclusion regarding the voluntariness of Gray's confession. In its factual findings, which are supported by the record, the trial court recognized that Gray was elderly but had no mental or

developmental disabilities. The record does not indicate that he had any prior experience with law enforcement. Although Gray did not graduate from high school, he reported having eleven years of education. The DVD recording of his interview reflects that he understood what was happening and was able to read, albeit with some difficulty. The trial court noted that he was advised of his rights and waived them, that he was not deprived of anything, that no impermissible threats or promises were made to him, and that the interview was "intense" but not particularly lengthy.[2] We note too that the detectives used interview techniques intended to elicit a confession, such as sympathizing with Gray, establishing a rapport, minimizing his actions, and offering alternative scenarios regarding what had occurred. But they did not lie about the evidence or make false representations to him.

{¶ 18} Although the trial court cited the "intensity" of the interview as a factor militating toward an involuntary confession, we find nothing remarkable about it. Having reviewed the DVD recording, we note that the tone was conversational and generally polite. The detectives never raised their voices, and Gray never appeared to feel threatened or intimidated. The detectives did tell Gray they disbelieved his denials, but Alley also urged him to tell the truth and not to tell them something he did not do.

{¶ 19} A significant factor in the trial court's finding of an involuntary confession appears to be its belief that the detectives failed to honor Gray's invocation of his right to remain silent. As set forth in our analysis of the first assignment of error, however, we conclude that Gray never unambiguously invoked that right. Therefore, contrary to the

---

[2] Although the total length of time Gray spent in the interview room was roughly two and one-half hours, we note that he was not interviewed the entire time. In addition, he began making the incriminating statements at issue approximately 50 minutes into the interview.

trial court's finding, the detectives did not fail to honor Gray's invocation of his right to remain silent.

{¶ 20} In the end, the record reflects a relatively routine and benign interview of an elderly suspect who possessed a modest education and no prior experience with law enforcement. Gray was told he could terminate the questioning at any time, but he never unambiguously did so. We see nothing about the interview to support a finding that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. Accordingly, the State's second assignment of error is sustained.

{¶ 21} The judgment of the Montgomery County Common Pleas Court is reversed, and the cause is remanded for further proceedings.

. . . . . . . . . . . .

WELBAUM, J., concurs.

FROELICH, J., dissenting:

{¶ 22} The Appellee initialed and signed a pre-interview form listing that he was being interviewed for "sexual assault" and which stated:

"If you decide to answer questions now without a lawyer present, you will

still have the right to stop answering at any time. You also have the right

to stop answering at any time until you talk to a lawyer."

Realizing that Appellee had difficulty in reading and writing, the detective orally explained what this meant: "So if you start talking today and you decide you're done talking, you have that right." (DVD at 9:10:26) The Appellant was then asked questions by the detective and they began talking about the complainant.

**{¶ 23}** After a half hour, in response to questions about his touching her vagina, he says "I know I didn't go down inside her pants and touch her." The detective then asks, "Did she put your hand down there?" The Appellee says twice, "I'm just going to leave it like that," and, subsequently, in response to further questions, "Because I don't have anything else to say, leave it like that," and "I don't have nothin' else to say."

**{¶ 24}** He had been told that if he decided he was done talking, he could stop answering. True, he could have said "pursuant to my rights under the Fifth Amendment to the U.S. Constitution as applicable to the states through the due process clause and pursuant to Article I, Section 10 of the Ohio Constitution, I invoke my right to remain silent," or "not only do I have nothing else to say about whether I put my hands in her pants and touched her 'down there,' but I do not have anything else to say about anything," or perhaps, as in *Miller*, "I am done talking."

**{¶ 25}** Even assuming he was expressing his decision not to talk about going inside the victim's pants, that touching is the gravamen of the crime of sexual assault for which he was being interviewed – and about which he had "nothin' else to say." I would find that this semi-literate suspect who had no previous contact with law enforcement unambiguously expressed his desire to stop answering questions.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Meagan Woodall

Kristine E. Comunale
Hon. Timothy N. O'Connell