THE STATE OF OHIO, APPELLEE, *v.* HOUSE, APPELLANT.

(No. 77-955—Decided May 31, 1978.)

298

Mr. *Fleet Freeman*, prosecuting attorney, for appellee.

Messrs. *Fahey & Schraff* and Mr. *Christopher R. Schraff*, for appellant.

LOCHER, J. Initially, appellant takes issue with the trial court's denial of his motion to suppress his inculpatory statement. Counsel for appellant argues that the statement was the product of an unlawful in-custody interrogation. It is not denied that appellant was advised of his constitutional rights to remain silent and to be repre-

sented by counsel, as required by *Miranda* v. *Arizona* (1966), 384 U. S. 436. Moreover, appellant concedes that he executed a written waiver of his *Miranda* rights before the commencement of the interview. The focal point of the contention that the statement was the product of an illegal interrogation is that appellant's attempts to remain silent and his refusal to answer questions subsequent to his written waiver of the *Miranda* rights constituted a revocation of the waiver and reinvoked his right to remain silent.

Appellant has failed to advance any case wherein silence to certain questions subsequent to a waiver of rights has been held sufficient to rescind the waiver and thus necessitate a termination of the interview. Instead, appellant, in an attempt to buttress this argument, is apparently relying upon the following passage in *Miranda, supra,* at pages 473-474:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."

Recently, the United States Supreme Court had the opportunity to interpret this statement contained in *Miranda, supra.* That court, in *Michigan* v. *Mosley* (1975), 423 U. S. 96, 103, found that "[a] reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . .' 384 U. S., at 479." The court then denoted that "[t]he critical safeguard identified in the passage at issue is a person's 'right to cut off questioning.' *Id.,* at 474." The court, in *Michigan* v. *Mosley, supra,* thereby concluded, at page 104, that the *Miranda* paragraph at issue required the accused's " 'right to cut off questioning' " be " 'scrupulously honored.' "

The facts of the instant cause fail to show any infringement of appellant's right to cut off questioning. It is well established that the refusal to answer certain questions is

not the equivalent of a rescission of a previously given waiver of *Miranda* rights. In *State* v. *Nichols* (1973), 212 Kan. 814, 512 P. 2d 329, the Supreme Court of Kansas was confronted with the factual situation wherein the interrogation of the defendant continued after his question, "Well, do I have to say that?" Refusing to construe this query as an expression that questioning cease *in toto*, that court stated, at page 816 in its opinion:

"* * * If, in fact, defendant had desired to terminate the interrogation he could have simply stated that he would rather not answer any more questions."

Similarly, in *State* v. *Anspaugh* (1976), 97 Idaho 519, 547 P. 2d 1124, while acknowledging that *Michigan* v. *Mosley, supra*, recognized the right to cut off questioning, the Supreme Court of Idaho rejected the defendant's contention that he had rescinded his waiver of his *Miranda* rights. The purported foundation for rescission was the defendant's statement in response to a certain question: "I'd rather not make any other comments at this time." In *State* v. *Anspaugh, supra*, the court, although noting the defendant's refusal to answer certain questions, found no error in the admission of the defendant's statement, since there was no evidence of coercion or undue pressure which would deprive the defendant of control of the interrogation.

The instant cause is clearly distinguishable from cases cited by appellant wherein the defendant made specific requests to terminate the questioning. Cf. *United States* v. *Olof* (C. A. 9, 1975), 527 F. 2d 752; *United States* v. *Clayton* (E. D. Wis., 1976), 407 F. Supp. 204; *Michigan* v. *Mosley, supra* (423 U. S. 96). Appellant, in the cause *sub judice*, did not at any time request to discontinue the interview. It would be a strained interpretation to construe, as urged by counsel, that appellant's silence to certain questions meant that he desired to cease the interview and therefore necessitate the police officers to repeat the *Miranda* rights and obtain a waiver thereof before continuing the questioning. We thus view appellant's silence in

response to certain questions to indicate only his desire not to answer that specific question.

We, therefore, find, upon consideration of the record, which discloses that the interrogation, although only in the morning, lasted less than an hour, that the appellant was read his *Miranda* rights, that he did not request a termination of the interview, and that the trial court's refusal to suppress the inculpatory statement was not in error. The first proposition of law is rejected.

Appellant argues next that the trial court erred in failing to find that any mitigating circumstances were established by a preponderance of the evidence.[1] This contention of error is essentially premised upon two factors: (1) The testimony of the defense psychologist, Dr. Leland, that appellant could have been suffering from sexual psychopathy which was the causative factor of the crime, and (2) the assertion of appellant's counsel that sexual psychopathy is tantamount to mental deficiency as that term is used in R. C. 2929.04(B)(3).

R. C. 2929.04(B) states, in relevant part:

"* * * [T]he death penalty for aggravated murder is precluded when, considering the nature and circumstances of the offense and the history, character, and condition of the offender, one or more of the following is established by a preponde[ra]nce of the evidence:

"* * *

"(3) The offense was primarily the product of the offender's *psychosis* or *mental deficiency*, though such

---

[1]The appellee erroneously states in its brief to this court the following:

"It is important to note that in such a mitigation hearing it is the Defendant-Appellant who has the burden of proof by a preponderance of the evidence."

In *State* v. *Downs* (1977), 51 Ohio St. 2d 47, this court stated that the mitigation hearing is not an adversary proceeding and neither party bears the burden of proof. No assignment of error has been raised that the trial court placed the burden of proof upon the appellant. Upon an examination of the record, it is apparent that the trial judge applied the standard announced in *State* v. *Downs, supra.*

condition is insufficient to establish the defense of insanity.'' (Emphasis added.)

The record is void of any evidence of the psychosis of the appellant. It does, however, contain Dr. Leland's diagnosis of the appellant as a sexual psychopath. In explaining the difference between a psychotic and a psychopath, Dr. Leland stated:

"* * * Thus he [psychotic] in a legal sense, loses the sense of right and wrong.

"A psychopath typically knows what's right and what's wrong. He doesn't care.''

Counsel's assertion that appellant's sexual psychopathy is equated with mental deficiency is unsupported by the testimony in the record. Dr. Leland's testimony on the relationship of sexual psychopathy to mental deficiency is the following:

Mr. Freeman: "One need not be mentally deficient to be a sexual psychopath.''

Dr. Leland: "That's true.''

Mr. Freeman: "Correct?''

Dr. Leland: "That is absolutely correct.''

Mr. Freeman: "As a matter of fact, there isn't any particular connection between mental deficiency and psychopathy, is there?''

Dr. Leland: "Not at all.''

Moreover, in response to a question concerning the appellant's mental condition, Dr. Leland stated the following:

"Well, he seems to be functioning at a mild-to-borderline level of intelligence with a fair indication that the intellectual difficulties are related to some form of congenital brain disfunction, possibly related to a convulsive disorder, but I don't have any data on that.

"His current functioning, however, is well within the low-average range of ability and doesn't really seem to be contributory to the rest of the events of either the interview or the history.''

Moreover, assuming, *arguendo*, the mental deficiency

of appellant, R. C. 2924.04(B)(3) requires that the offense be primarily a product of appellant's mental deficiency. On this point, the record contains at best contradictory testimony. Dr. Leland, the psychologist testifying for the defense, after first equivocating, testified during cross-examination that he believed the crime to be primarily a product of sexual psychopathy. However, the record contains testimony to the contrary by two other witnesses. The state's psychiatrist, Dr. Cates, on the basis of an interview with the appellant and an examination of the reports of Dr. Leland, Dr. Smith, Dr. Birch and the social services of Columbus State School, testified that it was his belief that the crime was not primarily the product of appellant's mental deficiency. Also, during the mitigation hearing, David H. Tompkins, a social worker with an extended professional association with appellant, when asked if he believed the crime to have been the product of appellant's mental deficiency, replied:

"I don't think that I could say it would be a product of his mental deficiency as much as the way that his environment has had an influence upon his own behavior."

Nor, can we find in the record any implication that the trial court narrowly interpreted the mitigating circumstances in contravention of *State* v. *Black* (1976), 48 Ohio St. 2d 262. In fact, our decision, in *State* v. *Black,* was specifically called to the attention of the trial court during the mitigation hearing. Moreover, in *State* v. *Harris* (1976), 48 Ohio St. 2d 351, decided five days after *State* v. *Black, supra,* and before the mitigation hearing in the instant cause, this court was faced with an analogous situation. The appellant in that case was a recognized sociopath[2] and of borderline or low to average intelligence. Justice Celebrezze, writing for a unanimous court, agreed with the trial court's finding that there was no evidence of the psy-

[2]"Sociopath" is defined as a psychopath in Stedman's **Medical Dictionary** (23 Ed., 1976). Ballentine's Law Dictionary (3 Ed., 1969) contains the following definition of "sociopath": "Another term for sexual psychopath."

chosis or the mental deficiency of the appellant and, at page 362, stated:

"* * * [W]e do not equate 'sociopath' as being either a psychosis or a mental deficiency.''

Accordingly, based upon the record in the instant cause, we agree with the conclusion of the trial court, that the evidence failed to establish any one of the mitigating circumstances by a preponderance of the evidence.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN and SWEENEY, JJ., concur

P. BROWN, J., concurs in the syllabus and the judgment.

