OPINION
This timely appeal arises from Appellant's no contest plea and the subsequent findings of guilt on the charges of felonious assault with a firearm specification, carrying a concealed weapon and improper discharge of a firearm into a habitation. For the following reasons, this Court affirms in part and reverses in part the judgment of the trial court.
On October 18, 1997, Merle R. Thompson ("Appellant"), a sixteen-year-old juvenile, fired gunshots at Royace Brown, who was standing on the porch of 409 South Seventh Street in Steubenville, Ohio. Brown was not hit by any of the bullets. Police responded to a report of the incident call and were immediately approached by Brown who told the officers what had happened and that Appellant had fled on foot. Police then observed Appellant running between houses in the 800 block of South Seventh Street where he discarded the gun behind one of the houses.
Police chased Appellant on foot and apprehended him. Police did not read Miranda warnings to Appellant at the scene. Sergeant Boni of the Steubenville Police Department transported Appellant to the police station. During this trip, Boni asked Appellant where the gun was located. Appellant responded that it was behind one of the houses where he was pursued by the police. Upon arrival at the police station, Boni told other officers the information about the location of the gun. Boni then read Miranda warnings to Appellant. Appellant invoked his right to remain silent but did not request an attorney. Appellant was transported to a hospital and then to the juvenile detention center. En route to the detention center, Officers Sowers and Ensell engaged in conversation with Appellant. Officer Sowers stated to Appellant that he was lucky that no one had been killed because of the shots at the house. (5/28/98 Tr. pp. 40-41). Appellant responded that he was not shooting at the house.
On October 21, 1997, the State of Ohio filed charges against Appellant in the Jefferson County Court of Common Pleas, Juvenile Division. On January 15, 1998, the juvenile court held a hearing to determine if Appellant was amenable to rehabilitation in the juvenile system and to determine if the case should be transferred to the Common Pleas Court, General Division. On January 15, 1998, the juvenile court filed a judgment entry binding the case over to the General Division so that Appellant could be tried as an adult.
On February 4, 1998, Appellant was indicted on one count of attempted murder (R.C. §§ 2903.02, 2929.02) with a firearm specification, one count of felonious assault (R.C. § 2903.11(A)(2)) with a firearm specification, one count of carrying a concealed weapon (R.C. §2923.12(A)) and one count of improperly discharging a firearm into a habitation (R.C. § 2923.161) with a firearm specification. At his arraignment on February 12, 1998, Appellant pleaded not guilty to all counts in the indictment.
On May 20, 1998, Appellant filed a motion to suppress evidence. Appellant argued that the gun was discovered as a result of questioning that violated his Constitutional rights. Appellant also argued that the bullets recovered from the scene of the shooting and the statement he made while being transported to the juvenile detention center also should be suppressed.
A hearing on the motion was held on May 28, 1998. The trial court filed a journal entry that same day denying Appellant's motion. The trial court found that the public safety exception to the Miranda rule applied to Appellant's case. The trial court also stated that there was no reason to suppress the bullets as the gun was not suppressed from evidence. Finally, the trial court found that, with respect to Appellant's statement that he did not shoot at the house, Appellant was well aware of his right to remain silent and that his statement was not in response to interrogation but was made in response to general comments made by Officer Sowers.
On June 4, 1998, Appellant withdrew his guilty pleas and entered pleas of no contest to the charges of felonious assault with the firearm specification, carrying a concealed weapon and improper discharge of a firearm into a habitation with a firearm specification. In exchange, the State dropped the attempted murder charge.
On July 17, 1998, Appellant was sentenced to three years incarceration for felonious assault with one year for the firearm specification to be served prior and consecutive to the sentence for felonious assault, twelve months for carrying a concealed weapon to be served concurrently with the sentence for felonious assault and three years for discharging a firearm into a habitation to be served concurrently with the sentence for felonious assault. By the same judgment entry, the trial court also denied Appellant's motion for stay of execution and for bond pending appeal.
On July 17, 1998, Appellant filed a notice of appeal requesting an immediate hearing on the denial of a stay and bond. The matter was assigned case number 98-JE-28. On July 17, 1998, Appellant filed a separate appeal of the January 15, 1998, Judgment Entry which certified that Appellant should be tried as an adult. This was assigned case number 98-JE-29. On July 24, 1998, this Court sustained Appellant's motion for stay of execution and set a conditional bond. We subsequently denied the State's motion to reconsider the stay.
On August 14, 1998, Appellant filed a third notice of appeal, specifically arguing that the trial court erred in overruling his prior motion to suppress evidence and that the order did not become final until the filing of the sentencing order. That appeal was assigned case number 98-JE-32. By a Journal Entry filed on September 17, 1998, this Court consolidated the cases numbered 98-JE-28 and 98-JE-32 and dismissed the latter for record keeping purposes.
Appellant's first assignment of error states:
 "I. THE HONORABLE SAMUEL W. KERR ERRED IN CERTIFYING SAID JUVENILE AS AN ADULT FOR TRIAL PURPOSES IN LIGHT OF THE RECOMMENDATION OF THE STATE'S EXPERT, DR. GOLAS, THAT HE BE TRIED AS A JUVENILE."
In challenging the fact that the Juvenile Court relinquished jurisdiction, Appellant relies on the report of the state's expert witness, Dr. Anthony Golas, a psychologist, who concluded that as Appellant was of "borderline intelligence" and as this was Appellant's only involvement with legal authorities, he should be tried as a juvenile. (1/5/98 Tr. p. 23). Appellant further refers to Dr. Golas's testimony that testing did not reveal any sociopathic, antisocial or criminal behavior in Appellant. Appellant also states that Dr. Golas testified that Appellant did not test positive for elevated levels of anger and that tests indicated, "some sort of moral character." (Id. at 27-28). The balance of Appellant's argument is largely an impassioned plea based on his unique circumstances.
A juvenile court has wide latitude to retain or relinquish jurisdiction of a juvenile proceeding, and the ultimate decision is within the discretion of the court. State v. Watson (1989), 47 Ohio St.3d 93, 95. Therefore, we may not disturb the lower court's decision absent an abuse of discretion. Id.; State v. Houston (1990), 70 Ohio App.3d 152, 156. An abuse of discretion is more than an error of law; the trial court's actions must have been unreasonable, arbitrary or unconscionable. Statev. Adams (1980), 62 Ohio St.2d 151, 157.
The procedure for binding over a juvenile for criminal prosecution to the general division of the common pleas court is governed by Juv.R. 30 and R.C. § 2151.26. The purpose behind the rule and the statute is, "the assessment of the probability of rehabilitating the child within the juvenile justice system." State v. Watson, supra, at 95. As of July 1, 1997, Juv.R. 30 governs procedural matters while the statute governs all substantive matters, including considerations to determine a juvenile's amenability to rehabilitation within the juvenile court system. (Juv.R. 30, 1997 Staff Notes).
R.C. § 2151.26 provides that at a bindover hearing the juvenile court must determine that there are reasonable grounds to believe both that the child is not amenable to care or rehabilitation in the juvenile system and that the safety of the community may require that the child be placed under restraint, including, if necessary, beyond the age of majority. R.C. § 2151.26(C)(1). Moreover, when determining whether to transfer jurisdiction from juvenile to criminal prosecution, R.C. §2151.26(C)(2) mandates that the juvenile court is to consider the following factors in favor of transferring jurisdiction:
 "(a) A victim of the act charged was five years of age or younger, regardless of whether the child who is alleged to have committed that act knew the age of that victim;
 "(b) A victim of the act charged sustained physical harm to the victim's person during the commission of or otherwise as a result or the act charged.
 "(c) The act charged is not a violation of section 2923.12 of the Revised Code, and the child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.
 "(d) The child has a history indicating a failure to be rehabilitated following one of more commitments pursuant to division (A)(3), (4), (5), (6), or (7) of section 2151.355 of the Revised Code.
 "(e) A victim of the act charged was sixty-five years of age or older or permanently and totally disabled at the time of the commission of the act charged, regardless of whether the child who is alleged to have committed that act knew the age of that victim."
In the present matter, Appellant essentially argues that Dr. Golas' testimony should have been the primary factor considered by the juvenile court. However, several courts have held that a juvenile court is not bound by expert opinions in determining the amenability of a juvenile.State v. Lopez (1996), 112 Ohio App.3d 659, 662; State v. Houston,supra, 70 Ohio App.3d at 156. Moreover, in State v. Watson, supra, the Ohio Supreme Court stated that there was no requirement that a juvenile court resolve any or all of the amenability considerations against the juvenile, "* * * so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment."99 Ohio St.3d at 95.
The juvenile court specifically found that, "[b]ecause of the seriousness of the offense and the facts of the case, [Appellant] is not amenable to care or rehabilitation * * *" in the juvenile system and that, "[t]he safety of the community may require that [Appellant] be placed under legal restraint, including, if necessary, for the period extending beyond [Appellant's] majority." (1/15/98 J.E. pp. 1-2). The juvenile court also stated that it considered every factor pursuant to R.C. § 2151.26(C)(2) in support of its conclusion. The court emphasized that two of the three allegations against Appellant involved firearm specifications, which is a factor to be considered pursuant to § 2151.26(C)(2)(c). The juvenile court concluded its findings by stating, "[i]t is the finding of the Court, therefore, that the seriousness of the alleged offenses overcomes the testimony that the child may be rehabilitated as the testimony of Dr. Golas indicates." (J.E. 1/15/98 p. 2)
In light of the juvenile court's specific finding that the seriousness of the alleged acts, felonious assault and discharging a firearm into a habitation, outweighed expert testimony that Appellant is amenable to rehabilitation, this Court holds that the juvenile court did not abuse its discretion in relinquishing jurisdiction. Appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "II. THE HONORABLE JOHN J. MASCIO ERRED IN DENYING THE SUPPRESSION OF THE GUN, THE BULLETS, AND THE STATEMENT IN QUESTION."
With respect to the issue that the gun should have been barred from evidence at trial, Appellant simply asserts that it should have been suppressed as it was obtained as a result of questioning which ensued prior to Appellant being advised of his constitutional rights pursuant toMiranda v. Arizona (1966), 384 U.S. 436.
With respect to the bullets found at the scene, Appellant's entire argument alleges that:
 "If the gun is suppressed as evidence, so would the bullets as `fruits of the poisonous tree.' Furthermore the inconclusive identification of the bullets found as belonging to the revolver in question is also grounds for suppression. Judge Mascio found that this inconclusive test goes to the weight of the evidence and not whether the evidence should be suppressed. He erred. It is submitted that if items of evidence, i.e. bullets, cannot be conclusively linked to the gun in question, then they must be suppressed to avoid violation of the Defendant's Federal and State Constitutional Rights."
With respect to Appellant's statement to police that he was not shooting at the house, he asserts that it was made as the result of a custodial interrogation in violation of Miranda v. Arizona, supra.
Appellee responds that custodial questioning of Appellant concerning the whereabouts of the gun used in the shooting was within the public safety exception to the Miranda warnings. Appellee cites New York v.Quarles (1984), 467 U.S. 649, where the United States Supreme Court held that an officer may ask questions of a suspect in custody so long as the questions are reasonably prompted out of concern for public safety. Id.
at 656. In the alternative, Appellee asserts that the gun should have been admitted under the inevitable discovery rule. State v. Perkins
(1985), 18 Ohio St.3d 193, at syllabus. Appellee asserts that there was a high probability that police would have discovered the gun, as they were already searching the area where the gun was found when Appellant was questioned.
Appellee argues that the bullets were found independently of the gun and not as a result of any questioning of Appellant. Appellee further contends that the fact that testing was inconclusive as to whether the bullets were fired from the gun recovered by police is a matter concerning the weight of the evidence, not its admissibility.
Appellee also argues that Appellant's statement that he was not shooting at the house should not have been suppressed as it was not made in response to questioning by police. Appellee states that when Appellant made the statement, he had been read his Miranda rights and was aware that he had the right to remain silent. Appellee avers that Appellant initiated the conversation between himself and the police officers who were transporting him. Appellee further contends that Appellant's statement was not the result of custodial interrogation, but rather, it was in response to a statement made by an officer that was not intended to elicit a response.
An appellate court will not disturb a trial court's decision on a motion to suppress when it is supported by competent, credible evidence.State v. Winand (1996), 116 Ohio App.3d 286, 288. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Kobi (1997), 122 Ohio App.3d 160,168. While accepting that the facts as found by the trial court are true, we must then, "* * * independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet with legal standards * * *" applicable to the case. State v. Brown
(1996), 116 Ohio App.3d 477, 481.
In Miranda v. Arizona, the United States Supreme Court held that an individual subjected to custodial interrogation must be informed of his right to remain silent and of his right to have counsel present during questioning. 384 U.S. at 467-471. The United States Supreme Court has recently reiterated its position that a criminal defendant must be informed of his or her Miranda rights and that this is a federal constitutional rule applicable to both state and federal governments.Dickerson v. United States (2000), 147 L.Ed.2d 405, 419-420. "Miranda has become embedded in routine police practice to the point where the warnings have become part of our national culture." Id. at 419.Dickerson affirmed Miranda's core ruling that, "unwarned statements may not be used as evidence in the prosecutor's case in chief." Id. at 420.
However, in New York v. Quarles, the Supreme Court formulated an exception to Miranda. Quarles, supra, 467 U.S. at 652. In Quarles, the police apprehended a rape suspect and discovered he was wearing an empty shoulder holster. Prior to reading Miranda rights to the suspect, an officer asked the suspect where the gun was located. The suspect nodded toward some empty cartons and stated, "the gun is over there." Id. In deciding the issue whether such questioning violated the suspect'sMiranda rights, the United States Supreme Court held that:
 "* * * there is a `public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved."
 Id. at 655-656.
The Supreme Court further stated that:
 "Whatever the motivation of the individual officers in such a situation, we do not believe that the doctrinal underpinnings of Miranda require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety."
 Id. at 656.
The Court reasoned that, had Miranda warnings deterred the suspect from disclosing the location of the gun, "* * * the cost would have been something more than merely the failure to obtain evidence useful in convicting [the suspect]." Id. at 657. The officer needed to know the location of the gun, "to insure that further danger to the public did not result from the concealment of the gun in a public area. Id. (emphasis added).
The public safety exception to Miranda does not apply to all situations in which an accused is believed to have used a gun in the commission of a crime, and questioning must be limited to the objective of securing the safety of the law enforcement officers and the public at large. State v.Prim (1999), 134 Ohio App.3d 142, 154. In order to establish the need to apply the public safety exception, the state must demonstrate that: "1) there was an objectively reasonable need to protect the police or the public, 2) from an immediate danger, 3) associated with a weapon, and that 4) the questions asked were related to that danger and reasonably necessary to secure public safety." Id.
In the present case, the trial court found that the public safety exception of Quarles applied to the facts of this case. There is competent and credible evidence to support such a conclusion. At the suppression hearing, Sergeant Boni testified that while transporting Appellant to the police station and prior to advising Appellant of hisMiranda rights, he asked Appellant where the gun was located. Boni stated, "[m]y major concern at the time was to try to find the weapon. There was a lot of children in that area and I was worried someone might find it and hurt themselves or someone else." ((5/28/98 Tr. p. 8). Boni further testified that he felt there was an immediate danger. (Id. at 13). Boni also testified that he asked Appellant no other questions. (Id. at 8-9). Boni's testimony reveals that he was reasonably prompted by a concern for the public safety. As such, the trial court properly reached the legal conclusion that the public safety exception applied and properly declined to suppress the gun from evidence.
With respect to bullets found at the scene, the trial court concluded that testimony of a ballistics expert concerning whether the bullets were fired from the recovered gun would go to the weight of evidence and not to admissibility. (5/28/98 Judgment Entry p. 2). The trial court further stated that there was no reason to suppress the bullets as the gun would be admitted into evidence. (Id. at p. 2).
Appellant argues that the bullets should be suppressed as fruit of the poisonous tree. Notwithstanding that this argument is moot as the trial court properly denied the motion to suppress the gun, Appellant's argument here is not logical. There is no indication in the record that the bullets were obtained as a result of Sergeant Boni's questioning of Appellant about the gun. There are indications in the record that the bullets were found independently of the gun, as a state's witness was prepared to testify. (5/28/98 Tr. p. 54-57). Moreover, Appellant did not challenge the manner in which the bullets were found. (Id. at p. 56).
If evidence is derived independently from an illegal action by the government, it need not be suppressed. State v. Myers (1997),119 Ohio App.3d 376, 382, citing Silverthorne Lumber Co. v. UnitedStates (1920), 251 U.S. 385; see also Murray v. United States (1988),487 U.S. 533; State v. Carter (1994), 69 Ohio St.3d 57, 68. With no evidence at the suppression hearing that the bullets were obtained as a result of an illegal act, they are not subject to exclusion.
With respect to Appellant's argument that the trial court failed to suppress his statement that he was not shooting at the house, it is well-settled that custodial interrogation must cease if an individual invokes his right to remain silent at any time prior to or during questioning. Miranda, supra, at 473-474. Police may continue interrogation only if the accused himself initiates further communication, exchanges, or conversations with police and if the accused validly waives his right to remain silent. Edwards v. Arizona (1981),451 U.S. 477, 484-485.
 "* * * courts may admit [the defendant's] responses to further questioning only on the finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." (Citations omitted.) Smith v. Illinois
(1984), 469 U.S. 91, 95, 105 S.Ct. 490, 492-493, 83 L.Ed.2d 488, 493-494. This bright-line test prevents the police from wearing down and confusing the defendant to obtain a waiver of his rights. Id. at 98, 105 S.Ct. at 494, 83 L.Ed.2d at 495-496."
 State v. Knuckles (1992), 65 Ohio St.3d 494,496.
Not all communications made by an accused to police can be considered an initiation of conversation relating to the investigation. Oregon v.Bradshaw (1983), 462 U.S. 1039, 1045. Some inquiries are so routine that they do not represent a desire on the part of the accused to open up a generalized discussion of the investigation. Additionally, initiation of conversation in and of itself does not constitute a waiver of the right against self-incrimination. Id.
A suspect's waiver of his right against self-incrimination must be made voluntarily, knowingly and intelligently. Miranda, supra,384 U.S. at 444. The state bears a heavy burden to demonstrate that an accused has waived his right against self-incrimination. Id. at 475. A criminal suspect cannot be deemed to have waived his right to silence unless the authorities have first informed him or her of that right, since that is, "the threshold requirement for an intelligent decision as to its exercise." Miranda, supra, at 468.
Juveniles are entitled both to protection against compulsory self-incrimination under the Fifth Amendment and to Miranda warnings where applicable. In re Gault (1967), 387 U.S. 1, 54. When a juvenile is subjected to custodial interrogation, special care must be taken to insure that his or her rights are protected, particularly when it is alleged that the juvenile has waived the right to silence. Id. at 45. "In deciding whether a juvenile's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; and the existence of physical deprivation or inducement." In re Watson (1989), 47 Ohio St.3d 86, at paragraph one of syllabus.
"If counsel was not present for some permissible reason when an admission [by a juvenile] was obtained, the greatest care must be taken to assure that the admission was voluntary in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." In re Gault,supra, 387 U.S. at 54; see also Fare v. Michael C. (1979), 442 U.S. 707,725. Although the Ohio Supreme Court has declined to adopt the rule that a juvenile must have a parent or attorney present before a valid waiver of the right to silence can be found, the presence or absence of a parent or attorney is a significant factor when considering the totality of circumstances. See In re Watson, supra, 47 Ohio St.3d at 90.
Once the right to silence has been invoked, new Miranda warnings must be given before questioning may resume. State v. Williams (Nov. 12, 1996), Allen App. No. 1-96-24; State v. Wolff (Dec. 28, 1990), Seneca App. No. 13-89-21; State v. North (Sept. 20, 1989), Hamilton App. No. C-880436; State v. Wilkerson (Dec. 31, 1980), Franklin App. No. 80AP-295; see also State v. House (1978), 54 Ohio St.2d 297, 300. "When police ask questions of a suspect in custody without administering the required warnings, Miranda dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief." Oregon v. Elstad (1985), 470 U.S. 298, 317. As previously stated, the right of a criminal defendant to be given Miranda
warnings prior to custodial interrogation is a federal constitutional right. Dickerson v. United States, supra, 147 L.Ed.2d at 442.
It is well-settled that Miranda rights are only implicated when law enforcement personnel are engaging in custodial interrogation of a criminal defendant. State v. Mason (1998), 82 Ohio St.3d 144, 153, citingBerkemer. v. McCarty (1984), 468 U.S. 420. There is no dispute that Appellant was in custody during the time that the conversation took place. Appellee argues, though, that the conversation that took place between Appellant and Officers Ensell and Sowers could not be considered as interrogation. We disagree with this assertion.
"Miranda rules are not so narrow as to apply to only `those police interrogation practices that involve express questioning of a defendant * * *.'" State v. Tucker (1998), 81 Ohio St.3d 431, 435, quoting RhodeIsland v. Innis (1980), 446 U.S. 291, 298. Interrogation also includes, "the more subtle `techniques of persuasion' sometimes employed by police officers that do not rise to the level of express questioning, but which can be extremely coercive in some situations." Tucker, supra, at 435, citing Innis, supra, at 299-300.
 "Thus to determine whether a suspect has been `interrogated,' the heart of the inquiry focuses on police coercion, and whether the suspect has been compelled to speak by that coercion. This compulsion can be brought about by express questioning, but also can be brought about by the `functional equivalent' of express questioning, i.e., `any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"
 Tucker, supra, at 436, citing Rhode Island v. Innis, supra, at 300-301 (emphasis added, footnotes omitted). It is not necessary for the communication to be phrased in the form of a question for it to be considered interrogation. State v. Knuckles, supra,65 Ohio St.3d at 496.
The record reveals that Sergeant Boni of the Steubenville Police Department took Appellant to the police station and then read him hisMiranda rights soon after arriving there. (5/28/98 Tr. p. 9). Appellant had already been questioned by Boni about the location of the gun before he had been given Miranda warnings. (Id. at 8, 18). There is no dispute that Appellant immediately exercised his right to remain silent after being informed of his Miranda rights. (Id. at p. 11-12). Appellant did not invoke his right to an attorney. (Id. at p. 12). Appellant was turned over to other patrolmen to be transported to Ohio Valley Hospital. (Id.
at 21). Officers Sowers and Ensell then took Appellant from the hospital back to the police station, and afterward to the Stratton Juvenile Detention Center. (Id. at 40). Neither officer Sowers nor Ensell were told that Appellant had been notified of his Miranda rights or that he had exercised his right to remain silent. (Id. at 22, 44).
During the ride to the juvenile detention center, the officers and Appellant engaged in conversation. (Id. at 40). There is evidence supporting the fact that Appellant began the conversation. (Id. at 41). The record does not reveal what Appellant said when he started the conversation, although at some point Appellant did say that he wondered what was going to happen to him. (Id. at 47). The officers did not ask any questions during the conversation, but did discuss some of the facts of the case, and Officer Ensell told Appellant, "to get his life straightened around." (Id. at 47).
At some point during the conversation, Officer Sowers stated that, "[Appellant] was lucky that nobody got killed because of the shots in the house." (Id. at 40). Appellant then responded by stating, "I wasn't shooting at the house." (Id. at 50). This was interpreted by Officer Sowers as a confession. (Id.). Appellant did not have a parent, guardian or attorney present during any of the events or conversations in question, nor did anyone attempt to contact a parent or guardian prior to Appellant's alleged confession. There is no evidence that Appellant ever signed or was asked to sign a written waiver of his right to silence prior to this statement. It is not clear from the record how much time transpired between the time that Appellant asserted his right to remain silent and the moment he made the incriminating statement.
Our review of the record leads us to conclude that Appellant's statement must be construed as a response to custodial interrogation. Two police officers engaged Appellant in conversation after he had invoked his right to silence without informing him of his Miranda rights. Officer Sower's comments, although not in the form of a question, were obviously intended to provoke Appellant into talking about the shooting. The officers were not merely talking to one another, but rather, addressed their comments directly to Appellant. Under the standards promulgated byMiranda and its progeny, and due to the facts that Appellant was a juvenile without a parent or guardian present, the comments made by Officers Sower and Ensell qualify as interrogation.
Once a criminal defendant has invoked the right to silence, the right to remain silent must be "scrupulously honored." Michigan v. Mosley
(1975), 423 U.S. 96, 103-104; State v. Roberts (1987), 32 Ohio St.3d 225,226. The reasoning of Mosley is particularly applicable to the present case in that Mosley is one of the few cases dealing with Miranda rights in which the accused had invoked the right to remain silent but had not requested an attorney.
In Mosley, the accused was arrested for participating in two robberies at two different bars. He was given his Miranda rights, answered questions about the first robbery, and then invoked his right to remain silent. He did not ask for an attorney. The interrogation stopped, but two hours later another detective, after informing the defendant of hisMiranda rights, questioned him about the second robbery. His incriminating responses to the second interrogation led to a first degree murder conviction. The defendant appealed the conviction on the grounds that he should not have been interrogated a second time after he invoked his right to remain silent.
The Supreme Court held that the second interrogation was not unconstitutional because the police had "scrupulously honored" the defendant's right to remain silent. Mosley, supra, 423 U.S. at 104. Certain facts were crucial in upholding the conviction, namely, that the second officer gave the defendant full Miranda warnings prior to the interrogation, that the defendant signed a form acknowledging that he understood his rights, that two hours had passed between the first and second interrogations, that the second interrogation involved a different crime and that the second officer did not touch upon any of the facts or circumstances raised by the first interrogation. Id. at 104-105. The Supreme Court emphasized over and over the importance of repeating theMiranda warnings prior to the second interrogation. Id. at 105-107.
In contrast to Mosley, the facts of the instant case reveal that Appellant was interrogated about the gun, that he was later read hisMiranda rights, that he invoked his right to remain silent, that an undetermined amount of time passed, that he was interrogated a second time without being given any Miranda warnings, that he never signed any form waiving or even acknowledging that he understood his rights and that the second interrogation involved the same crime over which he had exercised his right to remain silent. We must then consider the fact that Appellant was a juvenile and that no parent, guardian or attorney was present to assist him in understanding or waiving his rights. The totality of the circumstances strongly indicates that Appellant's right to remain silent was not scrupulously honored and that he did not knowingly waive his right to remain silent.
Appellant's second assignment of error has merit with respect to his incriminating statement that he was not shooting at the house. The remainder of Appellant's second assignment of error as to suppression of the gun and bullet evidence is without merit.
We affirm the January 15, 1998 Judgment Entry which transferred this case from the Jefferson County Court of Common Pleas, Juvenile Division to the General Division in order that Appellant could be tried as an adult. We find that Appellant's second assignment of error has merit in part and we reverse that part of the May 28, 1998 Journal Entry which overruled Appellant's Motion to Suppress the statement he made to Steubenville police Officers Sowers and Ensell while en route to the juvenile detention center. We affirm the remainder of the May 28, 1998 Journal Entry. Based on our partial reversal, we remand this cause to the trial court with instructions to afford Appellant an opportunity to withdraw his no contest plea and proceed to trial and for further proceedings not inconsistent with this opinion.
Donofrio, J., concurs, Vukovich, J., concurs.