[Cite as *State v. Blythe*, 2013-Ohio-1688.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                           :

     Plaintiff-Appellee                          :        C.A. CASE NO.   24961

v.                                                     :        T.C. NO.    10CR1345

WINSTON L. BLYTHE                           :          (Criminal appeal from
                                                Common Pleas Court)

     Defendant-Appellant                        :

                                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the 26th day of April, 2013.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

WILLIAM F. OSWALL JR., Atty. Reg. No. 0080597, 810 Sycamore Street, Fifth Floor, Cincinnati, Ohio 45202
        Attorney for Defendant-Appellant

. . . . . . . . . .

FAIN, P.J.

{¶ 1}    Defendant-appellant Winston L. Blythe appeals from his conviction and

sentence for Rape of a Child Under the Age of Thirteen, in violation of R.C. 2907.02(A)(1), a felony of the first degree. Blythe contends that the trial court erred when it overruled his motion to suppress statements he made during a custodial interrogation.

{¶ 2}   We conclude that the trial court did not err in overruling the motion to suppress. Blythe waived his right to counsel and consented to the interview. Blythe did not indicate a category or categories of questions that were off limits. As the interview progressed, Blythe answered some questions, which included a question about his physical contact with the child at the time of the alleged Rape, expressly declined to answer some questions, and remained silent after some questions. Ultimately, Blythe gave incriminating answers. We conclude that Blythe did not unambiguously rescind his waiver of his right to remain silent, and that the interviewing police officer was not required to anticipate which questions Blythe would decline to answer, or otherwise divine which questions Blythe regarded as lying outside the scope of his consent. Accordingly, the judgment of the trial court is Affirmed.

### I.   The Custodial Interrogation

{¶ 3}   One afternoon in late April 2010, Blythe allegedly performed fellatio on a five-year-old, in the child's home. After being alerted to the incident, City of Union police officers arrived at the scene, arrested Blythe, and transported him to the Montgomery County Jail. That evening, at about 10:00 p.m, Blythe was interviewed at the jail by Union Detective Jeff Smith. At the outset of the recorded interview, Blythe was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694  (1966), and

waived those rights. When asked if he was willing to talk with Detective Smith, Blythe responded: "Somewhat." During the interview, Blythe answered some questions, expressly declined to answer some questions, and simply remained silent after some questions. Towards the end of the interview, which lasted about 27 minutes, Blythe gave incriminating answers.

## II. The Course of Proceedings

{¶ 4} Blythe was indicted on one count of Rape of a Child Under the age of Thirteen, and one count of Gross Sexual Imposition. Blythe moved to suppress the statements he made to Detective Smith during custodial interrogation. He contended that the statements he made to Detective Smith during the interview were coerced, and were in violation of his rights under *Miranda v. Arizona*, *supra*, because the "statements were solicited after an unambiguous assertion of his right to remain silent," and "the police did not scrupulously honor his right to cut off questioning." Blythe also asserted that he invoked his right to counsel during the interview but was ignored by Det. Smith.[1] Following a hearing, the motion to suppress was overruled.

{¶ 5} Thereafter, Blythe pled no contest to Rape of a Child Under the Age of Thirteen, and the Gross Sexual Imposition charge was dismissed. The trial court found

---

[1] The record establishes that Blythe did not initially raise this argument in his written motion to suppress. Based on evidence adduced during the suppression hearing, however, Blythe argued in a post-hearing memorandum that his request for counsel was ignored by the police. The trial court addressed this argument in its decision overruling Blythe's motion to suppress. Accordingly, this argument is preserved for the purposes of this appeal.

Blythe guilty of Rape, and subsequently sentenced him to ten years in prison. Blythe was also designated as a Tier III sexual offender. From his conviction and sentence, Blythe appeals.

{¶ 6} Blythe's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT MADE TO THE POLICE WHEN HIS CONSTITUTIONAL RIGHTS WERE VIOLATED.

### III. The Trial Court Did Not Err in Finding that Blythe Did Not Inform Detective Smith that He Desired to Have Counsel Present at the Interrogation

{¶ 7} Blythe first contends that the trial court erred when it overruled his motion to suppress. Specifically, Blythe argues that his admissions should have been suppressed because he unequivocally invoked his right to counsel and his right to remain silent during the interview.

{¶ 8} In considering a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662,

2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*.

{¶ 9} In *Miranda v. Arizona*, *supra*, the United States Supreme Court held that a defendant who is subjected to custodial interrogation must be advised of his or her constitutional rights and make a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible. The warnings required by *Miranda* are satisfied where, prior to the initiation of questioning, the police apprise the suspect of the State's intention to use his statements to secure a conviction and inform him of his rights to remain silent and to have counsel present. *Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

{¶ 10} "In a pretrial suppression hearing, when the admissibility of a confession is challenged by the accused, the burden is upon the prosecution to prove compliance with *Miranda*; that a knowing, intelligent, and voluntary waiver of Defendant's rights was obtained or occurred and that the inculpatory statement was voluntary. *State v. Kassow*, 28 Ohio St.2d 141, 277 N.E.2d 435 (1971) [vacated in part on other grounds]. However, once a case for the above elements is established, the criminal defendant then has the burden of proving his claim of involuntariness. *Id*." *State v. Alford*, 2d Dist. Montgomery No. 23332, 2010-Ohio-2493, ¶ 9-10.

{¶ 11} " * * * if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect

himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id*. at 459 (Emphasis sic.) A suspect " 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.' " *Id*.

{¶ 12} In *Davis*, the Supreme Court held that the statement "Maybe I should talk to a lawyer" did not invoke the right to counsel. *Id*. at 462. Similarly, the Supreme Court of Ohio has found that statements such as "I think I need a lawyer," "don't I supposed to have a lawyer present," and "could I call my lawyer" (followed by an affirmative response) do not invoke a right to counsel. *State v. Wild*, 2d Dist. Clark No. 2009 CA 83, 2010-Ohio-4751, at ¶ 50.

{¶ 13} Blythe testified at the suppression hearing that he invoked his right to counsel when he tried to contact his attorney by telephone prior to his interview with Detective Smith. Blythe further testified that he informed Detective Smith that he had contacted his attorney, Joseph Warden, prior to the beginning of the taped portion of the interview. Additionally, Blythe asserts in his brief that Detective Smith acknowledged that Blythe did, in fact, call his attorney prior to the beginning of the interview. Blythe also contends that he informed the jail staff that he contacted his attorney before the interview began. Thus, Blythe argues that Detective Smith should have known, or should have been

made aware by the jail staff, that he had contacted his attorney, thereby invoking his right to counsel.

{¶ 14} Conversely, Detective Smith testified that Blythe never informed him at any time prior to the interview that he had contacted an attorney. Detective Smith further testified that he was unaware of any attempt on Blythe's part to contact an attorney. At no point during the interview did Blythe state that he wanted to contact an attorney, nor did he mention that he had contacted an attorney with respect to the charged offenses.

{¶ 15} Upon review, we conclude that there is evidence in the record to support the trial court's finding that Blythe did not invoke his right to counsel prior to or during the interview conducted by Detective Smith. Detective Smith and Blythe were the only witnesses who testified at the suppression hearing. The trial court found Detective Smith's testimony to be more credible than Blythe's testimony regarding whether Blythe asked for counsel. At a hearing on a motion to suppress evidence, the trial court sits as the trier of fact, and is in the best position to evaluate the evidence by determining the credibility of the witnesses and the weight to be given their testimony. *State v. Pounds,* 2d Dist. Montgomery No. 21257, 2006-Ohio-3040, ¶ 17. Accordingly, we will not substitute our judgment for that of the trial court regarding the witness' credibility.

{¶ 16} We conclude, therefore, that the trial court did not err in rejecting this argument for suppression.

## IV. Blythe Did Not Unequivocally and Unambiguously
## Assert His Right to Remain Silent

{¶ 17} When a defendant is subject to a custodial interrogation, he must be advised of his rights pursuant to *Miranda v. Arizona, supra.* Here, Blythe was advised of his *Miranda* rights, and waived them at the outset of the recorded interview. "Once the warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Miranda* at 473-474.

{¶ 18} In *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the United States Supreme Court held that the admissibility of incriminating statements obtained after a person in police custody has initially decided to remain silent and not answer questions depends upon whether his or her right to cut off questioning was "scrupulously honored" by police. In concluding that *Mosley's* Miranda rights, particularly his right to remain silent, had not been violated, the Supreme Court noted that when the defendant indicated that he did not want to discuss the robberies for which he had been arrested, police immediately ceased interrogation and did not thereafter try to resume that questioning or persuade defendant to change his mind. The subsequent interrogation occurred after a significant lapse of more than two hours time, concerned another crime unrelated to the robberies, was conducted in a different location by a different police officer, and was preceded by a fresh set of *Miranda* warnings. *Id.*

{¶ 19} In the case before us, Blythe agreed to the interview. Throughout the interview, some questions he answered, other questions he expressly declined to answer, and after still other questions, he remained silent. He never informed Detective Smith that there were categories of questions, or topics, that he regarded as off limits – outside the scope of his consent to the interview. This is in contrast with *State v. Vanderpool*, 2d Dist. Montgomery No. 21908, 2007 Ohio-2430, ¶ 8, where the defendant "repeatedly told [his police interrogator] that he did not want to answer any questions regarding the alleged rape(s) of the victim."

{¶ 20} Among the questions Blythe chose to answer were:

Q. What kind of playing [were you and the victim, K, involved in]?[2]

A. Tickling.

Q. Kissing him on the belly?

A. Blowing against his belly.

A. Smacked him on the butt.

A. Spanked him – for disciplinary purposes.

Q. Ever kissed him?

A. [Affirmative answer].

Q. Have you ever shown your penis to K***?

A. Yes. [Explaining that it was a result of K's habit of walking in on Blythe while Blythe was in the bathroom, which has a broken lock.]

---

[2] We have no transcript of the interview, which was recorded on a CD that was received in evidence. Therefore, our transcription of the questions and answers may be inexact.

Q. Have you ever allowed him to touch your penis?

A. [Responded affirmatively, with an explanation that it was at K's initiative.]

Q. [That part of K's statement about] touching his butt with your hand and your fingers? Bare-bottomed? Is that true?

A. I told you that – [for the purpose of] correction.

Q. So you were pre-occupied with giving K*** kisses on his stomach at that time?

A. Um-hmm.

{¶ 21} Until late in the interview, Blythe resisted answering direct questions about the alleged fellatio, either by saying he was not going to answer the question, or by simply remaining silent. Not long after Detective Smith indicated that evidence was being submitted for DNA analysis, Blythe ultimately admitted having placed his penis on K's mouth on more than one occasion.

{¶ 22} In a case specifically referring to *Michigan v. Mosley, supra*, the Supreme Court of Ohio has held that "the refusal to answer certain questions is not the equivalent of a rescission of a previously given waiver of *Miranda* rights." *State v. House*, 54 Ohio St.2d 297, 299-300, 376 N.E.2d 588 (1978). In fact, the Supreme Court noted with approval an Idaho case[3] rejecting a claim of rescission of a *Miranda* waiver in which "[t]he purported foundation for rescission was the defendant's statement in response to a certain question: 'I'd rather not make any other comments at this time.' " *Id.* at 300. Blythe's refusal to answer certain specific questions is a

weaker foundation for a claim of rescission than the foundation found lacking in the Idaho case.

It would be a strained interpretation to construe, as urged by counsel, that appellant's silence to certain questions meant that he desired to cease the interview and therefore necessitate the police officers to repeat the *Miranda* rights and obtain a waiver thereof before continuing the questioning. We thus view appellant's silence in response to certain questions to indicate only his desire not to answer that specific question. *Id.* at 300-301.

**{¶ 23}** Blythe appears to have been playing a cat-and-mouse game with Detective Smith, choosing, until near the end of the interview, to answer questions if he could do so without uttering anything incriminating, but not to answer questions if his answers might incriminate him. In the meantime, Blythe succeeded in obtaining information from Detective Smith concerning the nature of the evidence against him.

If a defendant voluntarily offers information to police, his toying with the authorities by allegedly telling only part of his story is certainly not protected by *Miranda* or *Doyle* [*v. Ohio*], 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)]. A contrary rule would foreclose any cross-examination, for fear that it might reveal impeaching information intentionally withheld and inextricably interwoven with that which was divulged. *State v. Osborne*, 50 Ohio St.2d 211, 216, 364 N.E.2d 216 (1977).

**{¶ 24}** Although the mere refusal, or failure, to answer specific questions during custodial interrogation "may be insufficient, as a matter of law, to indicate an in-custody

---

[3] *State v. Anspaugh*, 97 Idaho 519, 547 P.2d 1124 (1976).

defendant's desire to cease interrogation," when a police officer concludes, rightly or wrongly, that a suspect in custody is asserting his right to remain silent, questioning must cease. *State v. Nelson*, 4th Dist. Ross No. 1984, 1994 WL 534930, at *3 (Sept. 22, 1994). In the case before us, by contrast, there is nothing in the record to reflect that Detective Smith had concluded that Blythe was asserting his right to remain silent.

{¶ 25} To operate as a bar to further questioning, a suspect's invocation of his right to remain silent, after *Miranda* warnings have been given and *Miranda* rights have been waived, must be unambiguous. *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2260, 176 L.Ed.2d 1098 (2010). "If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression 'if they guess wrong.' " *Id.*

{¶ 26} In the case before us, we conclude that Blythe's choice to answer some questions, but not others, after having expressly waived his right to remain silent, was not an unambiguous rescission of that waiver. A reasonable police officer in Detective Smith's position would not have been put on notice that Blythe's waiver of his right to remain silent had been rescinded with respect to some discrete category of questions or subjects. Detective Smith was not required to guess which questions Blythe would consider to be outside of the scope of the waiver of his right to remain silent that Blythe had already given.

{¶ 27} The trial court did not err in finding that Blythe did not invoke his right to remain silent, after having initially waived that right. Blythe's sole assignment of error is overruled.

**V. Conclusion**

{¶ 28} Blythe's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., dissenting:

{¶ 29} I disagree. What the majority classifies as a cat-and-mouse game, is an invocation of Blythe's right to be free from self-incrimination. In my view, as in *Vanderpool*, the police did not need to guess which category of questions Blythe considered outside the scope of his "somewhat" waiver of his right to remain silent. Every question that related to the alleged rape and gross sexual imposition, Blythe declined to answer by stating "I'm not going to answer that" or by remaining silent. In fact, some twenty minutes into the twenty-seven minute audio-recorded interview, Detective Smith becomes frustrated and irritably states "You're not answering [*the other*] questions I asked you. Is that correct?" (Silence from Blythe). Detective Smith: "O.K."

{¶ 30} This acknowledgment by Detective Smith came after Blythe declined to answer all of the following questions regarding the alleged crimes:

> Detective Smith: Are you willing to talk to me today?
>
> Blythe: Somewhat.
>
> Detective Smith: Ok-um. Any reason why [K] would say there was something else (besides belly kisses) done to him?
>
> [silence]
>
> Detective Smith: OK-[K] states-[K's] claiming that uh there was

more to it than just kissing on the belly.    Is there?

Blythe: I'm not going to answer that.

Detective Smith: Well [K's] telling me that on the day Mom walked through the room you were on the couch, or you were on the floor and he was on the couch and um his exact words to his mother was uh you sucked his worm, pee-pee.   Is that true?

Blythe: I'm not gonna say.

Detective Smith: Not gonna say.   Ok.

Detective Smith: Have you ever allowed him to touch your penis?

Blythe: He started off a long time ago pinching my butt and grabbing my butt and grabbing my crotch all three of them did, all three of the little ones did.

Detective Smith: Is that arousing?

[silence]

Detective Smith: Did you return the favor? [silence] Didn't return the favor?

Detective Smith: Have you ever placed your weiner against [K] in any way, shape, or form?   On his bottom, on his stomach, on his genital, on any part of his body that was uncovered. [silence] Never? [silence]

Detective Smith: When we talked to [K] he had a lot of things to say - he said it was going on for a while, there's a lot of activity

going on with you and him um.  Is he telling the truth or is he lying?

Blythe: Not gonna answer that.

Detective Smith: At no point in time did you ever put your mouth on [K's] penis? [silence] Not gonna answer that ok.

Detective Smith: Is there any reason you would do this to a five-year-old boy?   I mean any reason whatsoever? [silence] Ok.

[silence]

{¶ 31}    While I acknowledge the *Mosley* test focuses on what Detective Smith did and not Blythe's responses or lack thereof, *Mosley*, like *Miranda*, does impose duties upon the police, not the suspect, to protect individuals from the inherently coercive nature of custodial interrogation.   The reality is, Blythe had the constitutional right to control the subjects discussed and be free from self-incrimination.   These rights were not scrupulously honored.

{¶ 32}   I would reverse the judgment which denied Blythe's motion to suppress.

. . . . . . . . . .

Copies mailed to:

Kirsten A. Brandt
William F. Oswall, Jr.
Hon. Frances E. McGee